Minshall, J.
The litigation below arose in a proceeding in the probate court commenced by McCoy, assignee of C. W. Price, to sell lands. Stevens and Russell Kent were made parties. Each claimed a lien on the land prior to the-other; Kent under an execution on a judgment and Stevens under a mortgage that had been transferred to the land by a decree of rescission in a suit between Price and one Beck and others. The matter in dispute between these parties was appealed to the common pleas. That court on the hearing made a finding stating its conclusions of law and fact separately, and rendered a judgment in favor of Kent, giving him priority over Stevens. The latter prosecuted error to the circuit court where the judgment was affirmed, and error is prosecuted by him in this court, to reverse both the lower courts on the finding made in the common pleas.
*546 From the finding it appears that in January, 1890, Price and Beck exchanged lands by the execution of reciprocal deeds, the lands of the former deeded in exchange being situated in Perry county, and those of the latter in Ashtabula county; each at once taking possession of the lands received in exchange. In the month of October, 1890, Price made and delivered to Stevens on the lands in Ashtabula county a mortgage to secure $3,800, which was duly recorded. On November 1, 1890, Kent obtained a judgment before a justice of the peace in Perry county against Price for $287.20, and filed a transcript thereof in the clerk’s office of the county and caused an execution to be issued and levied on certain other lands of Price, that had not been conveyed to Beck.
On January 30, 1891, Price commenced a suit in Perry county common pleas to obtain a rescission of the exchange that had been made between him and Beck, on the ground of fraud, claimed to have been practiced by Beck and his associates. But as the mortgage he had executed precluded a rescission, unless it could in some way be removed, he entered into an agreement with Stevens whereby the latter stipulated, that if a rescission could be had by the removal of his mortgage, he agreed that it might be cancelled on the Ashtabula lands, on condition, however, that it should, by the decree of the court, be removed to and made a lien upon the Perry county lands, that should thus be restored to Price. By amendment this agreement was introduced and made a part of his petition by Price. On the hearing of the case, fraud was found and a decree of rescission made; and, in accordance with the agreement between Price and Stevens, and as a part of the decree, *547 the mortgage on the Ashtabula lands was ordered cancelled, and transferred to the Perry county lands. The case was appealed to the circuit court where on September 22, 1894, that court made a similar decree. As soon as the judgment of rescission was made in the common pleas, Kent caused an execution to be issued and levied on the lands under his judgment. And likewise, as soon as the rescission was ordered in the circuit court, made another levy on the same lands. And hence the question arises, which of these two parties has the prior lien on the lands; whether it be Stevens by virtue of the provisions of the decree of rescission, or whether it be Kent by virtue of the levies made under the executions issued upon his judgment. To prevent misapprehension, it should be stated that Kent was no party to the suit for rescission, nor to the agreement in regard to the transfer of the Stevens mortgage. The mortgage was not recorded in Perry county; and whatever validity it has as a lien on the lands in that county depends upon the effect of the decree of rescission.
It is claimed for Kent, that Price by reason of the fraud practised on him, remained the owner of the land; and that, as a consequence, his judgment became a lien on the land at the time his transcript was filed in the clerk’s office, or else at the date of the first levy, and if not then, at the date of the second, levy after the judgment had been rendered in the circuit court decreeing a rescission; and that the lien of Stevens is at most an equitable one. And particular importance is attached to the fact, that the circuit court, in the suit for rescission, found that, by reason of the fraud practiced, there was no consideration for the conveyance from Price to Beck, and that the title did *548 not pass from Price to Beck, .and was adjudged to be in Price as if no conveyance had been made.
It must, however, readily occur to one familiar with legal distinctions, that the finding of the court, that the title did not pass, but remained in Price as if no conveyance had been made, is not' a finding of fact, but a legal conclusion from facts about which there is no dispute, and, as we think, an erroneous conclusion. It is not disputed that Price in making the exchange, executed and delivered a deed to Beck for his lands in Perry county, given in exchange; and that it was in consideration of a deed made and delivered to him at the same time by Beck for his lands in Ashtabula. It needs no citation of authorities to show that the deed executed by Price passed the title to the lands so conveyed, and that the lands received by him in exchange constituted a consideration, and that nothing but the decree of a court could divest that title. They were subject to the equitable right of Price for a rescission; but they were no longer his lands in the sense that they could be levied on by any of his creditors, nor in the sense that a judgment rendered against him would become a lien thereon. Haynes v. Baker, 5 Ohio St., 253. We may go further and say, that the right that was in Price for a rescission was a right personal to himself, and could not be availed of by creditors, for’ it is not an equity in the land, but a mere right of action personal to the grantor, over which no one else has control. He alone can maintain it, for he alone can comply with the requirement of placing the opposite party in his former position, by executing a reconveyance of the lands obtained by him, and returning whatever else he may have received in exchange. And to *549 still further show the unsound ness of the claim made for Kent, and its want of any principle of equitjq it must be observed, that, in this case, the grantor was in no position, at the commencement of his suit, to have a rescission of the exchange, and could not have obtained such relief, but for the assistance afforded him by Stevens, in his agreement, that if, upon the facts, he was entitled to a decree, he would consent that his mortgage might be cancelled by the decree of the court, and transferred to the Perry county lands. Now, a creditor, should he have endeavored to subject the lands to the payment of his claim, could have done no more than stand in the shoes of the debtor. He would have been required to place the opposite party in statu quo; in other words Kent would have been compelled to make the same agreement with Stevens, that Price did, so that if the rescission had been made at his suit, it would have been subject to the mortgage of Stevens.
The case may be presented in another view. All that was restored to Price by the decree was the land he had exchanged subject to the mortgage. This was all that in equity he had a right to; for by executing the mortgage on the Ashtabula lands he had affected the value of his ownership therein to that extent. Hence the thing restored to him was simply an equity of redemption in the lands, and this was all that the levy of Kent’s execution could attach to. True, Price had the legal title when the levy was made, but it was subject to the lien imposed on the land by the very decree by which the land was restored. There can be no doubt of the power of a court, in the exercise of its equity jurisdiction, to make such a decree, when *550 so clearly required by the interests of justice; and no third person is affected in any of his vested rights. When Kent recovered his judgment, Beck owned the lands, and they would have remained in the ownership of Beck, but for the decree; and and this decree could not have been obtained on any other condition than it was obtained. Hence if Kent could avail himself of this decree, he must do so subject to its provisions. The decree is an entirety; and he cannot therefore avail himself of part of it and reject the other part. The provision as to the mortgage is a material part of the decree; and without that provision no rescission could or would have been made, and he would have had no claim of any valid character whatever against the land. It signifies nothing that Kent was not a party to it. He loses nothing by it to which he had any right. He merely seeks to gain by the loss of another, on the asumption that the rigidity of the law is such that the injustice cannot be avoided. But the law of remedial justice is not so infirm. Looked at from any standpoint of right and justice, the lien of Stevens on the land should be preferred to that of Kent.
In considering the case, it must be constantly kept in mind that Kent, prior to the rescission, had no right, legal or equitable, against the land; and hence the advantage he claims, if it were allowed him, would be in the nature of a wind-fall. He desires to reap where others have sown, without a particle of merit in his favor. He cannot then question the power of the court in administering equity, to make the decree it did; and by which Steven’s mortgage was cancelled on the Ashtabula land and transferred to the land restored to Price; *551 the rescission, the cancellation and the transfer, was in law one act, and must take effect as such.

Judgment reversed and judgment for the plainpiff 4n error.